UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE LOZANO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:18-cv-2164-KJN<br><br>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 14, 15) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act.[1] In her summary judgment motion, Plaintiff contends the Administrative Law Judge ("ALJ") erred by failing to articulate specific and legitimate reasons for discrediting the contradicted opinion of a treating physician. The Commissioner opposed, and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court DENIES Plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff stopped working in June 2013, and on May 27, 2015, she applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Administrative Transcript ("AT") 230–41.) Plaintiff listed her medical conditions as the following: "diabetes, neuropathy in feet and hands, bulging discs in back and neck, obesity, sciatica, will be having back surgery soon, chronic pain, back spasms, unable to walk long distances, and shortness of breath." (AT 273.) Plaintiff's application was denied initially and again upon reconsideration. (AT 101–02; 129–30.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 126.) At an April 6, 2017 hearing, Plaintiff testified about her condition, and the ALJ heard testimony from a vocational expert regarding Plaintiff's ability to perform her past work. (AT 34–76.)

On November 7, 2016, the ALJ issued a decision determining that Plaintiff was not disabled from her onset date through the present. (AT 12–30.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 15, 2013, Plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, cervical degenerative disc disease, lumbar degenerative disc disease,

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:

**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

osteoarthritis, diabetes mellitus with neuropathy, and history of carpel tunnel. (Id.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 19) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).) Based on this information, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she required a "sit–stand option." (Id.) In reaching this conclusion, the ALJ compared Plaintiff's symptoms to the objective medical evidence in the record, as well as all opinion evidence given by Plaintiff's physicians. (AT 20–23.) Relevant here, the ALJ gave "very little weight" to the opinions of Dr. Gregorius concerning Plaintiff's physical abilities, as expressed in an October 2015 medical source statement. (AT 22–23). Ultimately, the ALJ concluded at steps four and five that while Plaintiff not capable of performing past relevant work (AT 23), there were jobs existing in significant numbers in the national economy that Plaintiff could still perform. (AT 24–25.)

On June 12, 2018, the Appeals Council denied Plaintiff's request for review. (AT 1–6.) Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's final decision. Thereafter, the parties filed cross–motions for summary judgment. (ECF Nos. 1, 14, 15, 16.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

////

## III. ISSUE PRESENTED

Plaintiff contends the ALJ's decision, as detailed above, is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ failed to articulate specific and legitimate reasons for discrediting Dr. Gregorious's opinion as expressed in the October 2015 medical source statement. Therein, Dr. Gregorius detailed his assessment of Plaintiff's physical impairments, and stated his opinion that Plaintiff was "totally, completely, and permanently disabled." (AT 532–39.) Plaintiff contends the ALJ erred in finding: (i) Dr. Gregorius's opinion was inconsistent with his and other physicians' examination notes; (ii) Dr. Gregorius was required to provide a "narrative explanation" for his opinion that Plaintiff was disabled and unable to perform sedentary work; and (iii) Dr. Gregorius's statement of disability was improper since this issue is reserved to the Commissioner." (ECF No. 12–1 at p. 12–14.) Plaintiff argues that when Dr. Gregorius's opinion is credited as true, the only remedy is to remand for benefits. (Id. at p. 15.)

The Commissioner argues that in light of the medical evidence reflecting "conservative treatment" of Plaintiff's physical impairments, the ALJ sufficiently detailed why he (properly) discounted Dr. Gregorius's October 2015 opinion. (ECF No. 15 at pp. 7–13.) Thus, the Commissioner contends the RFC (and decision as a whole) is supported by substantial evidence, which should result in the ALJ's opinion being affirmed. (Id.) Alternatively, the Commissioner argues a finding for Plaintiff should result in a remand for further proceedings. (Id. at pp. 13–16.)

## IV. DISCUSSION

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate"

reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989).

**A. Whether Dr. Gregorius should be deemed a "Treating Physician."**

Initially, the Court notes that the parties disagree on whether Dr. Gregorius should be deemed a treating physician. Plaintiff appears to accept as fact that this physician was in fact a treating physician of Plaintiff. (ECF No. 14 at pp. 10–11.) Plaintiff cites to Ghokassian v. Shalala for support, wherein the Ninth Circuit found a particular physician was "without a doubt" the plaintiff's physician. 41 F.3d 1300, 1303 (9th Cir. 1994) Therein, the panel deemed the following dispositive on this issue:

> [Dr. Sweel] saw [plaintiff] twice within a 14–month period preceding the hearing and, significantly, [plaintiff] saw no other physicians during that period. More important, [plaintiff] requested that Dr. Sweel treat him, and Dr. Sweel prescribed drugs for [plaintiff]. [Plaintiff] subsequently listed Dr. Sweel as his treating physician, and Dr. Sweel referred to [plaintiff] as "my patient." Dr. Sweel is also the doctor with the most extensive contact with [plaintiff].

Id. Thus, the panel stated this physician's opinion was afforded more deference. Id. The Commissioner argues Ghokassian is distinguishable, asserting that Dr. Gregorius's relationship with Plaintiff was not so clearly indicative of "treating" status. The Commissioner points out that Plaintiff only saw Dr. Gregorius three times: the first "for a referral and examination," the second "for a second opinion regarding a surgery recommendation," and the third for the completion of disability paperwork. (ECF No. 15 at p. 6.) (citing Magallanes, 881 F.2d at 751).

The Court agrees that Plaintiff's relationship with Dr. Gregorius is not as close as was the plaintiff's in Ghokassian. In the October 22, 2015 report to Plaintiff's primary care provider, Dr. Gregorius notes that he performed an examination after Plaintiff requested a second opinion regarding back surgery. Therein, Dr. Gregorius refers to Plaintiff not as "his" patient, but as "your" patient (referring to a nurse practitioner under Plaintiff's primary care physician). Further, the record indicates that Plaintiff was consulting with a number of other physicians during this

time, and beyond her few consultations with Dr. Gregorius, Plaintiff does not appear to have maintained a level of care with him as was the case in Ghokassian.

Regardless of Dr. Gregorius's status, however, the parties appear to agree on the correct lens to be used: whether the ALJ's findings detail a "specific and legitimate" reason for discounting Dr. Gregorius's statement that Plaintiff is "totally, completely, and permanently disabled." (AT 539.); see Lester, 81 F. 3d at 831 (finding the contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons). Here, Dr. Gregorius's opinion appears to be contradicted by his own notes, as well as those of other physicians. Thus, the designation of treating or examining appears to have little effect on the Court's disposition of Plaintiff's claims. Cf. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("[I]f the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record.") (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); with Lester, 81 F.3d at 831 (9th Cir. 1995) ("An ALJ may reject the testimony of an examining, but non–treating physician, in favor of a non–examining, non–treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.") (quoting Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

**B. The ALJ offered specific and legitimate reasons for discounting the October 2015 opinion of Dr. Gregorius.**

The crux of Plaintiff's appeal to this Court concerns the ALJ's treatment of Dr. Gregorius's opinions expressed in the October 2015 medical source statement. Plaintiff requested a second opinion from Dr. Gregorius concerning another physician's assessment of her cervical spine. (AT 538.) Dr. Gregorius checked the following boxes for Plaintiff's physical abilities: (i) occasionally lift up to 10 lbs; (ii) sit four hours, stand one hour walk 30 minutes in an eight-hour workday; (iii) occasionally use her hands and feet; and (iv) occasionally perform "postural activities." (AT 532–35.) Dr. Gregorius also stated he believed that Plaintiff was "totally, completely, and permanently disabled," and that SSI and DIB was "justified based on her persistent neck pain as well as her diabetic neuropathy" (AT 439, 570.) Plaintiff argues the ALJ

only offered the following rationale when discounting Dr. Gregorius's opinions:

> [They] are inconsistent with the findings from Dr. Gregorius's own examinations of the claimant, as well as examinations by other treatment providers. Furthermore, other than listing the claimant's diagnoses, Dr. Gregorius failed to provide any sort of narrative explanation for reaching the conclusions that the claimant was "disabled" and unable to perform even sedentary work. In fact, his own treatment records reflect that the claimant's pain "is intermittent and annoying but not disabling to her." Finally, a statement regarding disability is an issue reserved to the Commissioner. For these reasons, the undersigned gives Dr. Gregorius's opinions very little weight. (AT 22–23.)

However, contrary to Plaintiff's argument, the preceding three pages of thee ALJ's report sets out a detailed and thorough summary of not only the other physicians' reports and opinions but also Dr. Gregorius's own medical reports.[3] (See AT 20–22.) This analyses includes (i) the ALJ's detailing of Plaintiff's pain management specialist (who found some spinal tenderness and decreased range of motion but otherwise "normal findings"); (ii) the findings of an examining neurologist (who noted "only mildly abnormal findings"); and (iii) the records from Plaintiff's primary care provider (who recommended aerobic exercise for Plaintiff's complaints of back pain). (AT 21.) Critically, some of Dr. Gregorius's own findings appear to directly conflict with his list of physical limitations and his opinion of "complete disability." For example, the ALJ noted Dr. Gregorius's June 2014 opinion that while Plaintiff had "decreased and painful Range of

---

[3] While true that the ALJ's treatment of Dr. Gregorius's October 2015 report is only four sentences long, the Court can infer that this seemingly–conclusory paragraph is supported by three full pages of analysis of the medical evidence immediately preceding. It would be overly formalistic to equate "specific and legitimate" with a requirement that the ALJ repeat every assertion made prior in the concluding paragraph. See, e.g., Sloan v. Berryhill, 2018 WL 4303731, at *4 (W.D. Wash. Sept. 10, 2018) ("The Court properly considers the ALJ's decision as a whole, not solely the portion of the decision addressing [specific] opinion[s] . . . .") (citing Rice v. Barnhart, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses . . . , we consider the ALJ's treatment of the record evidence in support of both his conclusions . . . .")); Clark v. Bowen, 668 F. Supp. 1357, 1360 (N.D. Cal. 1987) ("It would be overly formalistic to require the ALJ to repeat the entire evaluation section in order to fulfill [the] requirement of specific finding."); see also Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up).

Motion (ROM) of the cervical and lumbar spine," he found "negative Straight-Leg Raising (SLR) and 5/5 motor strength in all extremities." (AT 21.) The ALJ noted Dr. Gregorius's similar recommendation for Plaintiff to treat her issues by losing weight. (Id.) Further, in Dr. Gregorius's October 2015 letter to Plaintiff's nurse practitioner, he stated (and the ALJ cited) Plaintiff's "intermittent and annoying *but not disabling*" pain as a reason for her to avoid surgery. (Id.) (emphasis added.) The ALJ also noted Dr. Gregorius's recommendation that Plaintiff be treated "conservatively."[4] (AT 21, citing AR 438–39.); see, e.g., Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (opinion of total disability conflicted with the concurrent finding that the patient "needed only 'a program of conservative care'"). Given that Dr. Gregorius's own findings appear to conflict with his statements regarding Plaintiff's limitations and disability, the ALJ was tasked with resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ is responsible for resolving conflicts in the medical record."). The ALJ did so in line with other medical evidence, and the Court will not disturb this resolution. See Carmickle v. Comm'r, 533 F.3d 1155, 1165 (9th Cir. 2008) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.") (quoting Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1985)).

Further, given the medical evidence cited by the ALJ between AT 20–22 and the ALJ's authority to resolve conflicts between that evidence and certain of Dr. Gregorius's statements in the October 2015 letter, the undersigned finds the ALJ has met the "specific and legitimate" standard. See Magallanes, 881 F. 2d at 751 (an ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

---

[4] Further, the Commissioner points out that Dr. Gregorius's October 2015 letter makes the following statements: (i) "She has intermittent, not continuous, pain in her cervical spine."; (ii) "she does not have upper extremity radicular pain at all." (iii) "[S]he has pain free days, she has annoying but not disabling pain in her cervical spine, and she has no symptoms of radiculopathy or myelopathy and no findings of radiculopathy or myelopathy."; (iv) "she [has] no significant nerve root compression[.]" (AT 538.) While the ALJ did not quote these portions of Dr. Gregorius's letter, the undersigned finds these statements in line with those specific findings the ALJ did list. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." (citing Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

stating [an] interpretation thereof, and making findings."). This analysis includes the ALJ's recognition that Dr. Gregorius's opinion on Plaintiff's physical limitations was "inconsistent with the findings from Dr. Gregorius's own examinations of the claimant, as well as examinations by other treatment providers," as well as his statement that Plaintiff was "totally, completely, and permanently disabled." (AT 22.) Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.") (citing Magallanes, 881 F.2d at 751)); see also Boardman v. Astrue, 286 F. App'x 397, 399 (9th Cir. 2008) ("[A] determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance.") (citing 20 C.F.R. § 404.1527(e) (2012)). As to Plaintiff's argument that the ALJ erred in requiring Dr. Gregorius to provide a "narrative explanation" for his opinion that Plaintiff was disabled, the undersigned does not read the ALJ's opinion this way. Rather, it appears the ALJ was merely recognizing the dearth of support in the record for Dr. Gregorius's opinion on Plaintiff's disability.

## V. CONCLUSION

As the ALJ provided specific and legitimate reasons to assign "very little weight" to Dr. Gregorius's October 2015 opinion of Plaintiff's physical limitations and disability, the Court finds that substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff is not disabled. Buck, 869 F. 3d at 1048. Thus, judgment will issue in favor of the Commissioner.

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered

for the Commissioner; and

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: November 25, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

loza.2134